UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE NATIONAL MUTUAL INSURANCE COMPANY, a member of a pool of companies known as Celina Insurance Group,<br><br>    Plaintiff,<br><br>v.<br><br>JUSTIN HOHENBERGER, CRYSTAL HOHENBERGER, BRAD CASE and FAYE CASE, individually and as guardian and next of friend of S.G.C., a minor,<br><br>    Defendants.<br>_____<br>BRAD CASE, FAYE CASE, individually and as guardian and next friend of S.G.C., a minor,<br><br>    Cross Claim Plaintiffs,<br><br>v.<br><br>JUSTIN HOHENBERGER and CRYSTAL HOHENBERGER,<br><br>    Cross-Claim Defendants. | Civil Action No. 1:19-cv-00079-WCL-SLC |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

  Plaintiff, The Celina Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group ("Celina"), by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7-1 and 56-1, submits its Memorandum of Law in Support of Motion for Summary Judgment.

## I. **INTRODUCTION**

This declaratory action involves a material misrepresentation made in the insurance application process. Specifically, the question presented by this lawsuit is whether coverage exists for Justin Hohenberger and Crystal Hohenberger ("the Hohenbergers") for claims asserted against them by Brad Case and Faye Case, individually and as guardian and next friend of S.G.C., a minor, ("the Cases"), arising from a dog bite injury to the Cases' daughter by the Hohenbergers' dog ("the Incident"). On May 6, 2019, Brad Case and Faye Case, individually and as guardian and next friend of S.G.C., a minor, filed a Crossclaim against the Hohenbergers alleging that the Hohenbergers knew or should have known about their dog's dangerous propensities and that the Hohenbergers breached the duties they owed S.G.C., resulting in injury to S.G.C. The Hohenbergers have requested that Celina defend and indemnify them for the claims against them in the Crossclaim.

At the time of the Incident, Celina insured Justin Hohenberger and Crystal Hohenberger under a Homeowner's Policy No. 7118834-0 ("the Policy"). When Justin Hohenberger applied for this insurance, the application for insurance explicitly asked if the applicant owned any dog that was "in-full or in-part one of the following breeds: Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix." The insurance application signed by Justin Hohenberger was marked "no" to this question about dogs. The insurance application signed by Justin Hohenberger also contained an "Applicant's Statements" wherein Justin Hohenberger declared that the information provided in the application was true and complete.

After the Incident, Celina's investigation revealed that the dog involved in the Incident was, in fact, in-full or in-part one of the breeds listed on the insurance application. Celina also learned that Justin Hohenberger owned this dog at the time the application was completed. After learning of the material misrepresentation about dog ownership made in the application, Celina

2

denied coverage for the Incident, voided the Policy and returned the insurance premiums to the Hohenbergers.

As will be set forth in more detail below, it is clear that under Indiana law, a material misrepresentation in the application process has occurred. As such, Celina is entitled to judgment as a matter of law that (1) the Policy is void; (2) there is no coverage under the Policy for any claims arising out of the Incident; and (3) and Celina does not owe defense or indemnification for the claims against the Hohenbergers brought by the Cases in the Crossclaim.

## II. STATEMENT OF MATERIAL FACTS

1. Justin Hohenberger executed an application for a Homeowners Insurance Policy with Celina on September 8, 2011 ("the Application"). Defendant Justin Hohenberger's Responses to Plaintiff's First Set of Requests for Admission, attached and designated hereto as Exhibit 1 at Request Nos. 1, 3 and Ex. 1; Affidavit of Larry Goins, attached and designated hereto as Exhibit 2 at ¶ 3 and Ex. A.

2. The Application signed by Justin Hohenberger was for property and a modular home located at 7290 East Baven Road, Hamilton, Indiana. Exhibit 1 at Request Nos. 1, 3 and Ex. 1; Exhibit 2 at ¶ 3 and Ex. A.

3. The Application signed by Justin Hohenberger contained the following question:

> Do you own or have on premises any vicious, non-domesticated, or exotic animals? Do you own or have on premises any dog that has bitten previously, has displayed vicious or aggressive tendencies, has been attacked-trained and/or is in-full or in-part one of the following breeds: Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix?

Exhibit 1 at Request Nos. 1, 3 and Ex. 1: Exhibit 2 at ¶ 3 and Ex. A.

4. The Application signed by Justin Hohenberger was marked "no" for the question in paragraph 3 above. Exhibit 1 at Request Nos. 1, 3 and Ex. 1; Exhibit 2 at ¶ 3 and Ex. A.

5. The Application signed by Justin Hohenberger contains the following "Applicant's Statements" immediately before Justin Hohenberger's signature:

> I hereby apply to the Company for a policy of insurance as set forth in this application on the basis of the statements contained herein. I agree that such policy shall be null and void if such information is false, or misleading, or would materially affect acceptance of the risk by the Company. I have read the above application and any attachments and I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief.

Exhibit 1 at Request Nos. 1, 3 and Ex. 1; Exhibit 2 at ¶ 3 and Ex. A; Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶ 14.

6. In reliance on the information provided and representations contained in the Application, on September 9, 2011, Celina issued Homeowners Policy Number 7118834-0 to Justin Hohenberger for the property and a modular home located at 7290 East Baven Road, Hamilton, Steuben County, Indiana ("the Policy"). Celina renewed the Policy through the policy period of September 9, 2017 through September 9, 2018. Exhibit 2 at ¶ 4.

7. On or about August 22, 2018, Crystal Hohenberger notified Celina of a potential claim arising out of an incident that occurred on August 18, 2018 at their home located at 7290 E. Baven Road wherein their daughter's friend, S.G.C, a minor, was visiting and was bit by the Hohenbergers' dog, Mary ("the Incident"). Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶ 17.

8. After the Incident, but before this declaratory lawsuit was filed, Justin Hohenberger was asked about the breed of the dog at issue and Justin Hohenberger answered that the dog was a "Pitbull." Recorded Interview of Justin Hohenberger dated October 25, 2018, attached and designated hereto as Exhibit 3 at Celina 0166.

9. Through discovery in this lawsuit, Justin Hohenberger was asked to admit that the dog was a Pitbull. Justin Hohenberger admitted that Mary was an American Pitbull. Exhibit 1 at ¶ 6.

10. In the course of investigating the Incident, Celina learned that Justin Hohenberger owned Mary on September 8, 2011 when Justin Hohenberger completed the application. Exhibit 1 at ¶ 5; Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶¶ 21, 22, 23.

11. At the time Justin Hohenberger applied for homeowners insurance with Celina, Celina refused to underwrite the insurance if the Application indicated that the applicant owned a dog that was in full or in part one of the following breeds: Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix. Exhibit 2 at ¶ 5.

12. If Celina had known that Justin Hohenberger owned a dog that was in full or in part one of the following breeds: Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix at the time the Application was completed, Celina would not have issued the Policy. Exhibit 2 at ¶ 6.

13. On November 26, 2018, Celina sent correspondence to Justin and Crystal Hohenberger informing them that Celina was voiding the policy because of the material misrepresentation made by Justin Hohenberger in the Application regarding the fact that he owned or kept on premises a Pitbull. Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶ 25.

14. Along with the November 26, 2018 letter, Celina sent a check in the amount of $5,249.00 representing the premiums for the Policy. Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶ 26.

15. On March 8, 2019, Celina filed its Complaint for Declaratory Judgment seeking a declaration that the Policy was void, that there was no coverage under the Policy for the Incident, and that Celina was relieved from any duty to defend or indemnify for any claims arising from the Incident. (DE# 1).

16. On May 6, 2019, Brad Case and Faye Case, individually and as guardian and next friend of S.G.C, a minor, filed their Crossclaim against Justin Hohenberger and Crystal Hohenberger. (DE# 24-1).

17. The Crossclaim alleges that on August 18, 2018, S.G.C. was visiting Justin and Crystal Hohenberger's residential real estate located at 7290 E. Baven Road, Hamilton, Indiana when Justin and Crystal Hohenberger's dog viciously attacked S.G.C. biting her ear and other parts of her face. (DE# 24-1, ¶¶ 4-5).

18. The Crossclaim alleges that Justin and Crystal Hohenberger knew or should have known about the dog's dangerous propensities and owed a duty of reasonable care to restrain, muzzle, or isolate the dog and otherwise protect S.G.C. from harm. (DE# 24-1, ¶¶ 6-7).

19. The Crossclaim alleges that Justin and Crystal Hohenberger breached the duties that they owed to S.G.C., and as a result, S.G.C. suffered permanent injuries to her ear and face, permanent impairment and disfigurement, mental trauma, and pain and suffering. (DE# 24-1, ¶¶ 8-12).

20. The Crossclaim alleges that as a result of Justin and Crystal Hohenberger's negligence, S.G.C. required medical treatment, incurred medical expenses, will require future medical treatment and will incur additional medical expenses in the future. (DE# 24-1, ¶¶ 13-16).

21. The Crossclaim alleges that as a result of Justin and Crystal Hohenberger's negligence, S.G.C. lost the ability to enjoy her life to its fullest, and they have incurred pecuniary losses. (DE# 24-1, ¶¶ 17-18).

22. The Crossclaim alleges that, in their individual capacity, Brad Case and Faye Case, have lost the care, comfort, and consortium of S.G.C. (DE# 24-1, ¶ 19).

23. Justin and Crystal Hohenberger have requested that Celina defend and indemnify them for the claims against them in the Crossclaim. Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶ 36.

24. The Policy defines certain relevant terms as follows:

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

\* \* \* \*

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

   c. Under section II:

      (1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

\* \* \* \*

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds."

(Policy attached as Ex. B to Affidavit of Larry Goins, <u>Exhibit 2</u>, at HO 00 03 10 00, Page 1-2 of 22).

25. The Policy provides liability coverage as follows:

**SECTION II – LIABILITY COVERAGES**

**A.    Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

(Policy attached as Ex. B to Affidavit of Larry Goins, <u>Exhibit 2</u>, at HO 00 03 10 00, Page 15-16 of 22).

26. The Policy contains the following relevant conditions:

**SECTION II – CONDITIONS**

\* \* \* \*

**J.    Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

Relating to this insurance.

(Policy attached as Ex. B to Affidavit of Larry Goins, <u>Exhibit </u>2, at HO 00 03 10 00, Page 21 of 22).

27.     The Policy contains the following Endorsement:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
>
> **APPLICATION INCORPORATED INTO POLICY**
>
> It is expressly understood and agreed this policy is issued in full reliance on all information provided in your application for this insurance. All information provided in the application is deemed material and not a mere representation and is warranted by you to be truthful and correct. This application for insurance, whether signed or not signed by you, is hereby incorporated for all purposes as a part of this policy of insurance as if specifically attached hereto. You understand should any information contained in the application be incorrect or not truthful, this policy may at any time be declared void in its entirety and relieve the company from any duty to provide coverage or pay any claim.

(Policy attached as Ex. B to Affidavit of Larry Goins, <u>Exhibit </u>2, at MI 00 38 07 12 Page 1 of 1).

### III.  ARGUMENT

**A.      Summary Judgment Standard**

The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact requiring trial, and once they have done so, the burden shifts to the non-moving party to point to evidence in the record that would allow a rational trier of fact to find in its favor on the material question. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). The party opposing summary judgment cannot create a factual dispute solely by pointing to allegations in his pleading; he must instead produce evidence showing that there is a disputed issue for trial. *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir. 1997). A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual dispute is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving

party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, a party must supply evidence sufficient to allow a jury to render a verdict in his or her favor. *Baulos v. Roadway Exp., Inc.*, 139 F.3d 1147, 1150-1151 (7th Cir. 1998).

**B.    The Law for the Interpretation of Insurance Contracts[1]**

In Indiana, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted). Indiana courts interpret an insurance contract under the same rules of construction as other contracts. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citation omitted). Courts "interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract." *Id.* "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning, even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) (citation omitted). However, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (citation omitted).

An insurer's duty to defend is broader than its duty to indemnify. *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007); *see Ind. Farmers Mut. Ins. Co. v.*

---

[1] There is no dispute that the state law of Indiana should be applied to this coverage action. The Policy was issued in Indiana and premiums were paid by an Indiana insured. Additionally, this section of law is primarily taken from the Opinion and Order of this Court in *Celina Mut. Ins. Co. v Gallas, et. al.,* 2017 WL396184 (N.D. Ind. 2017).

10

*N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2010) ("If the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed."). Indiana courts have determined an insurer's duty to defend based on the allegations in the complaint and "those facts known or ascertainable by the insurer after reasonable investigation." *Newman*, 871 N.E.2d at 401 (citation omitted). "[W]here an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend." *Id.*; *see City of Evansville v. U.S. Fidelity and Guar. Co.,* 965 N.E.2d 92, 103 n.9 (Ind. Ct. App. 2012). If the pleadings demonstrate that "a claim is clearly excluded under the policy, then no defense is required." *Newman*, 871 N.E.2d at 401. Extrinsic evidence can be considered in assessing an insurer's duty to defend. *See Selective Ins. Co. of S.C. v. Erie Ins. Exch.,* 14 N.E.3d 105, 112-13 (Ind. Ct. App. 2014).

**C.      The Law Relating to Misrepresentations in the Insurance Application Process**

Under Indiana law, "a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option." *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 672 (Ind. 1997) (citations omitted). A misrepresentation in the application has been described as a "failure of the meeting of the minds" relating to the contract and the risk to be insured. *Id.*

The Indiana Supreme Court has explained materiality in the insurance application process as follows:

> Under one definition, a misrepresentation or omission is "material" if knowledge of the truth would have caused the insurer to refuse the risk or to charge a higher premium for accepting the risk. This inquiry focuses on whether the representation was false and material to the decision to issue the policy. Whether the applicant intended to mislead or knew of the falsity is irrelevant: "False representations, concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was innocently made or made with

11

>fraudulent design. A second approach to materiality in a case, such as this, where rescission is attempted after a loss has been incurred, would measure the materiality not against the underwriting decision, but rather against the loss. In other words, coverage of the incurred loss would be voided if the misrepresentation affected that risk, but not all coverage would necessarily be voided. Under either view, the materiality of the representation or omission is a question of fact to be resolved by the factfinder unless evidence is such that there can be no reasonable difference of opinion.

*Id.* at 672-673 (citations omitted) (finding that under both approaches a material misrepresentation occurred when a wife failed to list her husband as an operator of a vehicle on an auto application-husband's driving record, if disclosed, would have affected the insurer's decision to issue the policy and the loss involved the husband driving). "A misrepresentation on an application for an insurance policy is 'material' if the fact misrepresented, had it been known to the insurer, would have reasonably entered into and influenced the insurer's decision whether to issue a policy or charge a higher premium." *Omni Ins. Group v. Poage,* 966 N.E.2d 750, 755 (Ind. Ct. App. 2012).

This Court has addressed misrepresentations related to dog ownership in insurance homeowners applications. *See Buckeye State Mut. Ins. Co. v. Hall,* 2006 WL 3450603 (N.D. Ind. 2006), In *Buckeye,* Patricia Hall decided to purchase a new homeowner's insurance policy at the end of 2002. *Id.* at *2. She spoke with her insurance agent and informed him that she was looking for a policy that would cover earthquakes, her woodburning stove and her dogs. *Id.* The Halls owned six dogs, including a ninety-pound Doberman Pinscher, none of which had any prior bite history. *Id.* Mr. Brennan of the Burt Insurance Agency visited the Halls' home to assess the risks of the site on Buckeye's behalf. *Id.* at *3. Mr. Brennan testified that he did not observe any animals on the day he inspected the property. *Id.* Ms. Hall claimed that the dogs barked loudly any time a car stopped in the driveway or a person entered the yard, and that a person visiting their house would hear the dogs. *Id.* Ms. Hall met with Mr. Brennan on January 9, 2003 to complete her application for insurance. *Id.* The application included the following question: "Does the applicant or any tenant have any animals or exotic pets? (Note breed and bite history)." *Id.* Ms.

12

Hall claimed that she informed Mr. Brennan that she had dogs. *Id.* Mr. Brennan marked "no" to the question. *Id.* Directly above the signature line, the application provided:

> Applicant's Statement: I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief. This information is being offered to the company as an inducement to issue the policy for which I am applying.

*Id.* Ms. Hall signed the insurance application. *Id*. at *4. At the time Ms. Hall applied for her policy, Buckeye had a rule that there were certain dogs for which Buckeye refused to provide coverage, Doberman Pinschers were included in this rule. *Id.*

At the time of the application, the Halls, in fact, had a Doberman Pinscher. The Doberman Pinscher later bit the Halls' niece while the niece was visiting the Halls' home. *Id.* The Halls then filed a claim with Buckeye State Mutual Insurance Company. *Id.* Buckeye State Mutual Insurance Company, filed a complaint for declaratory judgment seeking a declaration that its insureds, Harry and Patricia Hall, were not entitled to coverage for their niece's dog bite claim. *Id.* Buckeye moved for summary judgment. *Id.*

This Court held that the Halls had misrepresented a material fact in the application process. *Id*. at *5. In finding a material misrepresentation, this Court relied on the two views of materiality set forth by the Indiana Supreme Court in *Colonial Penn Ins. Co. v. Guzorek*. *Id*. This Court held that the material misrepresentation occurred when the Halls' application reflected "no" as a response to the question asking about whether the applicant had any pets. *Id.* This Court held that there could be no reasonable difference of opinion as to the fact that the Halls' ownership of a Doberman would have influenced Buckeye's decision to insure the Halls since Buckeye had a rule of not insuring against the risks posed by Doberman Pinscher ownership. *Id*.

The Halls also argued that Mr. Brennan's knowledge of the Halls' animals should be imputed to Buckeye. *Id*. at *7. The Court, however, held that Buckeye was not bound by Mr.

13

Brennan's knowledge because Ms. Hall certified that the information on her application was true and correct when she signed it. *Id*. at *7-10. This Court explained:

> The Supreme Court of Indiana has recognized that an insurer cannot void coverage where the insurer "had knowledge of the facts notwithstanding the material misrepresentations, or where a reasonable person would have investigated further." *Foster*, 703 N.E.2d at 660 (citing *Guzorek*, 690 N.E.2d at 674). However, an insurer may rely on the representations of fact that an applicant for insurance makes on the application and is not under a duty to look beyond the representations as they appear on the application. *Foster*, 703 N.E.2d at 660 (citing *Guzorek*, 690 N.E.2d at 674). The Indiana Supreme Court has justified this rule by explaining that "[i]t is not unreasonable to demand that an insured supply accurate and complete information, read the application before signing it, and suffer the consequences if an omission or misstatement in the application is material to a subsequent loss." *Foster*, 703 N.E.2d at 660.

*Id*. at *7.

Of note in *Buckeye* is the fact that this Court also held that even if Ms. Hall informed Mr. Brennan of her dogs, Buckeye would not be bound by Mr. Brennan's knowledge because Ms. Hall certified that the application was true when she signed it. *Id.* This Court relied on cases holding the insured responsible for the content of an insurance application by signing it. *See Foster v. Auto-Owners Insurance Co.*, 703 N.E.2d 657 (Ind. 1998); *Metropolitan Life Insurance Co. v. Alterovitz,* 14 N.E.2d 570 (Ind. 1938); *Federal Kemper Insurance Co. v. Brown,* 674 N.E.2d 1030 (Ind. Ct. App. 1997). The *Buckeye* Court explained: "Pursuant to the decisions in *Foster, Alterovitz* and *Brown,* this Court finds that under Indiana law, Mrs. Hall had a duty to read her application before signing it and that by her signature, she adopted the answers in her application as her own, regardless of Mr. Brennan's knowledge of her actual situation." *Id*. at *8.

D. **The Hohenbergers' Policy is Void for Material Misrepresentations Made in the Application And There is No Coverage for the Cases' Dog Bite Claim**

The undisputed facts establish that the Application explicitly asked whether the applicant "owned or had on premises any dog that… is in-full or in-part one of the following breeds: Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix." Exhibit 1 at Request Nos.

14

1, 3 and Ex. 1; Exhibit 2 at ¶ 3 and Ex. A.  It is undisputed that the answer to that question was marked "no" on the Application.  Id.  It is also undisputed that Justin Hohenberger signed the Application.  Id.

The undisputed facts establish that the Application explicitly states that any policy issued by Celina is issued on "the basis of the statements contained [in the Application]." Id.; Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at  ¶ 14.  It is also undisputed that the Application further informs the applicant that any such policy issued on the basis of the statements contained in the application "shall be null and void if such information is false, or misleading, or would materially affect acceptance of the risk by [Celina]."  Id.  It is undisputed that by signing the Application, Justin Hohenberger declared that the information provided in the Application was "true, complete and correct."  Id.

The undisputed facts establish that the Policy explicitly states that Celina issued the Policy in "full reliance on all of the information provided" in the Application and that the all of the information in the Application is "deemed material" and is "truthful and correct."  Policy attached as Ex. B to Affidavit of Larry Goins, Exhibit 2, at MI 00 38 07 12 Page 1 of 1.  It is undisputed that the Policy explicitly states that "should any information contained in the application be incorrect or not truthful, [the] policy may at any time be declared void in its entirety and relieve [Celina] from any duty to provide coverage or pay any claim."  Id.  It is undisputed that Celina would not have issued the Policy if Celina had known that Justin Hohenberger or Crystal Hohenberger owned or had on premises a dog that was in-full or in-part one of the following breeds:  Rottweiler, Pitbull Terrier (Staffordshire Terrier), Chow or Wolf Mix.  Exhibit 2 at ¶ 6.

It is undisputed that when Justin Hohenberger was asked about the breed of his dog after the Incident, he admitted that his dog was a Pitbull.  Exhibit 3 at Celina 0166.  And it is undisputed

that Justin Hohenberger owned this dog at the time the Application was completed. Exhibit 1; Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶¶ 21,22, 23. It is undisputed that based on the material misrepresentation in the Application, Celina voided the Policy, denied coverage, and returned the premiums to the Hohenbergers. Answer of Defendants, Justin Hohenberger and Crystal Hohenberger, To First Amended Complaint for Declaratory Judgment at ¶¶ 25, 26.

This case, like *Buckeye,* involves a material misrepresentation in the insurance application process relating to dog ownership. The Court in *Buckeye* relied on the fact that the insured signed the application attesting to its truthfulness. Similarly, here, Mr. Hohenberger's signature on the Application cannot be ignored. Like the application in *Buckeye,* the Application, here, is nearly identical in notifying the applicant that the signature acts as a declaration that the information in the Application is "true, complete, and correct" and that the Policy "shall be null and void if such information is false, or misleading, or would materially affect acceptance of the risk by the Company."

The undisputed facts establish that failing to disclose that the Hohenbergers owned a Pitbull and/or signing the Application wherein the question regarding dog ownership was marked "no" constitutes a material misrepresentation in the insurance application process relating to dog ownership. As such, Celina respectfully requests that this Court grant summary judgment in favor of Celina and declare as a matter of law that (1) the Policy is void; (2) there is no coverage under the Policy for any claims arising out of the Incident; and (3) Celina does not owe defense or indemnification for the claims against the Hohenbergers brought by the Cases in the Crossclaim.[2]

---

[2] The Policy's conditions provide that Celina does not provide coverage to an "insured" who, whether before or after a loss, has intentionally concealed or misrepresented any material fact or circumstance, engaged in fraudulent conduct, or made false statements regarding the insurance." Justin Hohenberger's representation in the Application relating to dog ownership constitutes an intentional concealment or misrepresentation of material fact, and a fraudulent statement

## IV.  CONCLUSION

For all of the reasons set forth above, Celina respectfully requests that this Court enter summary judgment in its favor and declare as a matter of law that (1) the Policy is void; (2) there is no coverage under the Policy for any claims arising out of the Incident; and (3) Celina does not owe defense or indemnification for the claims against the Hohenbergers brought by the Cases in the Crossclaim.

Respectfully submitted,

/s/ Anna Mallon
Anna Mallon, #23693-49
Ian P. Goodman, #30645-49
Paganelli Law Group
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Phone:      317.550.1855
Fax:        317.569.6016
E-Mail:     amallon@paganelligroup.com
            ian@paganelligroup.com

*Co-counsel for Plaintiff, The National Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and/or first class U.S. Mail, postage prepaid:

James P. Fenton
EILBACHER FLETCHER, LLP
803 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
**Counsel for Defendants Justin Hohenberger and Crystal Hohenberger**

---

regarding the insurance.  Therefore, there is no coverage under the Policy for the Crossclaim and any claims arising from the Incident based on this condition in the Policy, as well.

Joseph A. Christoff
CHRISTOFF & CHRISTOFF
130 West Main Street, Suite 22
Fort Wayne, IN 46802
*Counsel for Defendants Justin Hohenberger and Crystal Hohenberger*

William A. Ramsey
BARRETT MCNAGNY LLP
215 E. Berry Street
Fort Wayne, IN 46802
*Counsel for Defendants Justin Hohenberger and Crystal Hohenberger*

Randal S. Forbes
Jason Rodman
FORBES RODMAN, P.C.
P.O. Box 374
Angola, IN 46703
*Counsel for Defendants Brad Case, Faye Case and S.G.C., a minor*

                                      */s/ Anna Mallon*
                                      Anna Mallon, #23693-49