IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE NATIONAL MUTUAL INSURANCE COMPANY, a member of a pool of companies known as Celina Insurance Group,<br><br>   Plaintiff,<br><br> v.<br><br>JUSTIN HOHENBERGER, CRYSTAL HOHENBERGER, BRAD CASE and FAYE CASE, individually and as guardian and next of Friend of S.G.C., a minor,<br><br>   Defendants.<br>_____<br>BRAD CASE, FAYE CASE, individually and as Guardian and next friend of S.G.C., a minor,<br><br>   Cross-Claim Plaintiffs,<br><br> v.<br><br>JUSTIN HOHENBERGER and CRYSTAL HOHENBERGER,<br><br>   Cross-Claim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO.: 1:19-cv-00079-WCL-SLC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>Justin and Crystal Hohenbergers' Response to The National Mutual Insurance Company's Motion for Summary Judgment</u>**

   Defendants/Cross-Claim Defendants, Justin Hohenberger ("Justin") and Crystal Hohenberger ("Crystal") (collectively "the Hohenbergers"), by counsel, submit their Response to the Motion for Summary Judgment filed by The National Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group ("Celina"), and ask the Court to deny Celina's request for summary judgment and, pursuant to F.R.C.P. 56(f), to enter summary judgment in favor of the Hohenbergers.

Page **1** of **11**

I.      **Introduction**

Celina claims that, because the Hohenbergers owned an American Pitbull or Pit Bull, they have no coverage under their homeowners insurance policy because Justin Hohenberger, after telling Celina through its agent that he owned an American Pitbull or Pit Bull, signed an application stating that he did not own a "Pitbull Terrier (Staffordshire Terrier)." Celina asks the Court to ignore the parenthetical explanation it placed in its application telling insureds that Celina considers a "Pitbull Terrier" to be a Staffordshire Terrier. There is no evidence indicating that the Hohenbergers owned a Staffordshire Terrier, so Celina's summary judgment motion fails, and Celina owes a duty to defend and indemnify the Hohenbergers.

At a minimum, Celina's decision to place the parenthetical "(Staffordshire Terrier)" after "Pitbull Terrier" created some ambiguity in the application. Courts construe ambiguities in insurance policies, including applications, strictly against insurance companies and in favor of coverage. Celina's choice of language could lead a reasonable insured in Justin Hohenberger's position to indicate that he did not own a Pitbull Terrier (Staffordshire Terrier), as evidenced by the fact that Celina's own agent interpreted the application in this way and affirmed that Justin Hohenberger did not own a Pitbull Terrier (Staffordshire Terrier) after being told that Justin owned a "Pitbull" and not being told that Justin owned a Staffordshire Terrier.

Finally, Celina has not provided any reason for its decision to not provide coverage to Crystal Hohenberger, who did not sign the application and who has been denied coverage by Celina nonetheless. The Court should find that Celina has an obligation to cover and provide a defense to both Justin and Crystal Hohenberger. But

even if the Court finds that Justin has no coverage, the Court should still find that Celina was and is required to defend and indemnify Crystal Hohenberger.

## II.     Statement of Facts

The Hohenbergers do not dispute the facts as stated by Celina, but add the following facts.

- The Policy indicates that Crystal Hohenberger is an insured under the Policy, as the Policy defines "you" as the insured named in the declarations (which is Justin Hohenberger) and the spouse, and defines "insured" as including "you." (ECF Doc. 84-2 p. 15.)

- Crystal Hohenberger did not sign the application submitted to Celina. (ECF Doc. 84-1 p. 9.)

- The Policy includes a "Severability Of Insurance" provision that states: "This insurance applies separately to each 'insured'." (ECF Doc. 84-2 p. 30.)

- The Policy states: "Your notice to our agent will be deemed to be notice to us." (EFC Doc. 84-2 p. 55.)

- Justin Hohenberger told Celina's agent that he owned a Pitt Bull as part of the application process. (Ex. A: Complete Recorded Statement of Justin Hohenberger p. 12.[1] )

- Celina's agent signed the application following a provision that states:

    > PRODUCER'S STATEMENT: The undersigned hereby
    > warrants and certifies that all information contained herein
    > is correct to the best of my knowledge and belief; that the
    > applicant has been asked and has represented all losses to
    > the best of their knowledge; that eligibility requirements

---

[1] Celina produced a copy of this statement in the course of discovery and designated a portion of this recorded statement as an exhibit to its summary judgment motion. The Hohenbergers designate a complete copy of this statement hereto.

Page **3** of **11**

>have been explained to the applicant; that this form was completed and then signed by the applicant; and that the undersigned has a signed copy hereof.

(ECF Doc. 84-1 p. 9.)

- The Policy does not define "Pitbull Terrier (Staffordshire Terrier)." (Exhibit B: Celina's Response to Hohenbergers' Interrogatories p. 2-3.)

- When asked to define "Pitbull Terrier (Staffordshire Terrier)," the term used in Celina's application, Celina objected "to the extent that [the question] asks for a definition of a group of words," and then failed to define the term, instead stating that "the plain and ordinary meaning of 'in-full or in-part one of the following breeds: Pitbull Terrier (Staffordshire Terrier)' includes the Hohenbergers' dog." (Exhibit B: Celina's Responses to Hohenbergers' Interrogatories p. 2.)

### III. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). A court may grant summary judgment in favor of either party once one party has moved for summary judgment. *See Jones v. Union Pacific Railroad Company*, 302 F.3d 735 (7th Cir. 2002); F.R.C.P. 56(f).

IV. **Argument**

A. **General rules of insurance policy interpretation.**

Under Indiana law, the interpretation of an insurance policy is a legal question for the Court. *See Tate v. Secure Insurance*, 587 N.E.2d 665, 668. (Ind. 1992). If the policy is clear and unambiguous, it will be given its plain and ordinary meaning. *Id*. When there is an ambiguity, the policy is strictly construed against the insurer, particularly with respect to an exclusion. *See Williams v. Safe Auto Ins. Co.*, 980 N.E.2d 326, 330 (Ind. Ct. App. 2012); *see also Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) ("Where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." (quoting *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000)). "An insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Williams*, 980 N.E.2d at 330. Courts "interpret policy terms from the perspective of an ordinary policyholder of average intelligence." *Id*.

Public policy favors a finding of liability insurance coverage. *See Home Insurance Company v. Neilsen*, 332 N.E.2d 240, 244 (Ind. Ct. App. 1975); *see also Hill v. Standard Mutual Casualty Co.*, 110 Fed 1001 (7th Cir. 1991). Insurance contracts are contracts of adhesion and a Court "will not remove from coverage a risk which a policy can be reasonably construed to protect against." *National Mutual Insurance Company v. Eward*, 517 N.E.2d 95, 100 (Ind. Ct. App. 1987). As the Indiana Court of Appeals has explained:

> The insurance companies write the policies; we buy their form or we do not buy insurance. Under familiar rules, where policy language is ambiguous, it is to be construed against its author. It seems to me that where such policy language is nonexistent, it is much more appropriate to give

> precedence to that sometimes competing principle of insurance law that the reasonable expectations of the insured should be honored.

*Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 142 (Ind. Ct. App. 1981).

## B.     Celina's application is ambiguous, at best.

Celina's application does not ask whether an applicant has an "American Pit Bull" or simply a "Pit Bull." The application asks whether an applicant has a "Pitbull Terrier (Staffordshire Terrier)." Celina chose to include "Staffordshire Terrier" in parenthesis immediately following "Pitbull Terrier," and while Celina would obviously prefer that the Court ignore this parenthetical, the Court cannot do so. *Patterson v. Allied Prop. & Cas. Ins.*, No. 3:13-cv-630-JPG-PMF, 2014 U.S. Dist. LEXIS 101785, at *9 (S.D. Ill. July 25, 2014) ("[I]t is not reasonable to interpret the use of parentheses to mean the parenthetical information is meaningless.").

A parenthesis serves to set out "[a]n explanatory or qualifying clause, sentence or paragraph, inserted in another sentence, or in course of a longer passage, without being grammatically connected with it." *Calvert v. Myers*, 79 Ind. App. 204, 207-09, 137 N.E. 578, 579 (1923) (quoting Century Dictionary); *see also Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 859-60 (7th Cir. 2002) (concluding that language in a parentheses modified the phrase immediately preceding the parenthetical); *Nexstar Broad. Inc. v. Fid. Communs. Co.*, 376 S.W.3d 377, 383 (Tex. App. 2012) ("Parentheses are normally used to provide some sort of explanation or qualification of other matter in the text." (quoting *In re O'Hara's Estate*, 549 S.W.2d 233, 237 (Tex. Civ. App.—Dallas 1977, no writ)). Thus, the language Celina chose for its application indicates that by "Pitbull Terrier," Celina means "Staffordshire Terrier." There is no evidence indicating that Justin owned a "Staffordshire Terrier," and, in fact, the evidence shows that he owned a

"Pit Bull." Therefore, not only is Celina not entitled to summary judgment, but also the Hohenbergers are entitled to summary judgment.

Finally, while the face of the Policy itself establishes an ambiguity and, therefore, coverage for the Hohenbergers, it is also worth noting that Celina's agent filled out the application and verified that the information in the application was correct after being told by Justin that the Hohenbergers owned a Pit Bull. The logical conclusion from this fact is that the agent read Celina's application and determined that a Pit Bull or American Pit Bull was not the same thing as a Staffordshire Terrier. *See Prudential Ins. Co. v. Winans*, 263 Ind. 111, 115-16, 325 N.E.2d 204, 206 (1975) ("Appellant had clothed its agent with apparent authority to interpret the meaning of the questions asked in the form and to record the information which was relevant. In such a situation, the principal is bound." (citing 3 Am. Jur. 2d Agency § 76)). Celina cannot logically argue that its application language unambiguously indicates that "Pitbull Terrier (Staffordshire Terrier)" means the same thing as "American Pit Bull" or "Pit Bull," when its own agent appears to have interpreted the application differently. *Cf. Prop. Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 399 (Ind. Ct. App. 1990) (explaining that a policy is ambiguous if "it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. . . ." (quoting *Landis v. American Interinsurance Exchange*, 542 N.E.2d 1351, 1353 (Ind. Ct. App. 1989), *trans. denied*). Indeed, a person of reasonable intelligence could have interpreted Celina's language in a variety of ways, including that Celina was asking whether an insured owned some sort of a Pitbull/Staffordshire Terrier mix (similar to a Labradoodle) or that Celina was asking only whether an applicant owned a Staffordshire Terrier. Therefore, even if Justin had told the agent that he did not own a "Pitbull Terrier (Staffordshire Terrier)," and

instructed the agent to check "no" next to that question, "no" would be the correct answer to that question based on strict interpretation of the application against Celina.

Not only can Celina not logically argue that its own agent's interpretation was unreasonable, but also, it is worth noting that Celina did not define "Pitbull Terrier (Staffordshire Terrier)" in its policy and could not supply a definition for the term when asked for one in Interrogatories. Celina can hardly argue that the application language is unambiguous under these circumstances. Because the language is ambiguous, it is construed strictly against Celina.

Celina drafted its application. If Celina had intended for applications to disclose whether they owned a Pit Bull that was not a Staffordshire Terrier, Celina could have easily done so by asking, for example, whether an applicant owned a "Pitt Bull Terrier, America Pit Bull, and/or Staffordshire Terrier." Celina chose, instead, to explain that by "Pit Bull Terrier," Celina meant "Staffordshire Terrier." Celina cannot now, after the fact, rewrite its application and disclaim coverage to an insured who did not own a Staffordshire Terrier.

### C.     Any determination that coverage does not exist for Justin Hohenberger would not apply to Crystal Hohenberger.

As indicated above, the Policy application's ambiguity requires Celina to provide coverage to both Justin and Crystal Hohenberger. However, if the Court finds that the Policy application is not ambiguous and that a misrepresentation precludes coverage for Justin, the Court should find that Celina has an obligation to cover and defend Crystal, who did not sign the application, but who is an insured under the Policy and who is a defendant in the cross-claim filed by the Case Family.

Indiana Courts recognized the innocent insured rule in *American Economy Insurance Company v. Liggett*, 426 N.E.2d 136 (Ind. Ct. App. 1981), in the context of a fire loss caused by arson committed by one insured and a claim by that insured's spouse. The Court of Appeals found the innocent spouse could recover, explaining:

> The reasonable expectation of the innocent insured that coverage will exist must be vindicated.
>
> Even in Indiana, we buy insurance to be indemnified when we have suffered a loss. Under Indiana law, insurance policies must be construed so as to effectuate indemnification to the insured or the beneficiary. Where any reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given.

*Id.* at 144. In reaching this conclusion, the Court of Appeals noted the generally-accepted principle that a spouse is not bound by, or jointly liable for, the acts of the other spouse. *Id.* at 143-44. This logic applies equally to the circumstances of this case.

Other courts have applied the innocent co-insured rule in the context of misrepresentations and reached the same result. *See, e.g., Mercantile Tr. Co. v. N.Y. Underwriters Ins. Co.*, 376 F.2d 502, 506 (7th Cir. 1967) (collecting cases "permitting an innocent coinsured to take despite arson or fraud committed by the other insured"); *Evanston Ins. Co. v. Watts*, 52 F. Supp. 3d 761, 768-70 (D.S.C. 2014) (finding that co-insureds other than the insured who provided false information in an application were not barred from obtaining coverage under the policy); *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383, 396, 324 A.2d 223, 232 (1974) ("In general, an innocent co-insured may take under an insurance policy despite fraud committed by the other co-insured.").

Further, even without resort to precedent, the plain turns of the Policy state that "This insurance applies separately to each 'insured'." (ECF Doc. 84-2 p. 30.) The Court should give this provision meaning and asses Crystal's right to coverage separately from Justin's right. As Celina has no evidence that Crystal made any misrepresentation, Celina cannot show that Crystal is not entitled to coverage under the Policy, and the Court should find that she is entitled to coverage under the Policy.

## V. Conclusion

For the foregoing reasons, the Court should deny Celina's motion for summary judgment on its declaration judgment action, find that Celina has an obligation to provide coverage and defense to both Justin and Crystal (or at least Crystal). Pursuant to F.R.C.P. 56(f), the Court should also grant the Hohenbergers summary judgment on this issue.

        Respectfully submitted,

        BARRETT MCNAGNY LLP

        /s/ William A. Ramsey
        William A. Ramsey #26547-53
        Casie J. Towsley, #35392-17
        215 East Berry Street
        Fort Wayne, Indiana 46802
        Telephone: (260) 423-9551
        Facsimile: (260) 423-8920
        E-mail: war@barrettlaw.com

        Joseph A. Christoff
        CHRISTOFF & CHRISTOFF
        130 West Main Street, Suite 22
        Fort Wayne, IN 46802

        Attorneys for Defendants/Cross-Claim Defendants
        Justin Hohenberger and Crystal Hohenberger

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of February, 2020, a copy of the foregoing was served to all counsel of record via the CM/ECF system.

      /s/ William A. Ramsey
      William A. Ramsey